UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ONEIDA TRIBE OF INDIANS OF WISCONSIN,

    Plaintiff,

v.                                                                Case No. 06-C-1302

VILLAGE OF HOBART,

    Defendant.

**MEMORANDUM DECISION AND ORDER**

On December 22, 2006, the Oneida Tribe of Indians of Wisconsin ("the Tribe") filed this action against the Village of Hobart ("the Village"), Wisconsin, for declaratory and injunctive relief. The Tribe seeks a determination that property it recently purchased within the original boundaries of its reservation is not subject to state laws that authorize the Village to impose taxes and special assessments on property that falls within its boundaries. The Tribe also seeks injunctive relief in the form of an order directing the Village to refund the more than $1.3 million in assessments paid by the Tribe for improvements already made to the property and to enjoin the Village from any future attempt to assess tribal land within the reservation boundaries for any additional improvements.

In response to the Tribe's lawsuit, the Village filed an answer in which it denied that the Tribe is entitled to the relief it seeks. The Village also filed a counterclaim seeking a declaration that the property acquired by the Tribe is subject to land use regulation, condemnation, assessment and taxation under state law. In addition, the Village's counterclaim seeks an injunction directing

the Tribe to pay all unpaid taxes and assessments relating to the property, which for calendar year 2006 are alleged to amount to more than $200,000.

The case is presently before the Court on the Tribe's motion to dismiss the Village's counterclaim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the Court lacks subject matter jurisdiction over the counterclaim because the Tribe is immune from suit. For the reasons set forth below, the Tribe's motion will be granted in part and denied in part.

## BACKGROUND

The Oneida Tribe of Indians of Wisconsin is a federally-recognized Indian tribe exercising powers of self-governance and governmental jurisdiction over the Oneida Reservation. (Hughes Decl. ¶2.) The Village of Hobart is a municipal corporation located in whole or in part within the original boundaries of the Oneida Reservation. In 1984, the Village designated approximately 490 acres of land in the southeast portion of the Village for an industrial park. In the years that followed, the Village authorized several projects to add infrastructure to the industrial park, including sewer, water, and gas lines, and roadways. (Compl. ¶ 19.) In separate transactions in 2000 and 2001, the Tribe purchased approximately 372 acres of the 490 acres of the area the Village had designated as an industrial park. (Compl. ¶ 19-21.) Shortly thereafter, the Village passed a resolution to extend one of the streets in the industrial park, O'Hare Boulevard, through the Tribe's newly acquired property. The project, known as the O'Hare Boulevard Project, called for the extension of the road, along with sewer, water, curb and gutter, street lights and electric lines, and was to be paid by special assessments on the properties deemed benefitted by the Village. (Compl. ¶ 22.) The Tribe objected to the project and informed the Village of its objection. (*Id.* ¶ 27.) Despite the Tribe's objection, the Village went ahead with the project and has collected over $1.3

million in special assessments from the Tribe for the O'Hare Boulevard Project since 2001. (*Id.* ¶ 29.)

In 2006, the Tribe purchased an additional 17.4 acres of property, known as the Forest Road Property, within the boundaries of its reservation in northern Hobart. The previous owner of the Forest Road Property had discussed with the Village a possible residential development involving seventeen residential lots and an extension of water and sewer lines through the property. (*Id*. ¶ 35.) Following its purchase of the Forest Road Property, however, the Tribe notified the Village that it did not intend to develop it. Despite the changes in ownership and intended use of the property, the Village has announced plans to initiate condemnation proceedings to obtain easements over the Forest Road Property for water and sewer upgrades. It was apparently at that point that the Tribe commenced this action.

**ANALYSIS**

Indian tribes in the United States enjoy the common-law immunity from suit traditionally afforded to sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Sovereign immunity bars not only lawsuits seeking money damages from an Indian tribe, but also claims for declaratory and injunctive relief. *Id.* Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation. *Id.*; *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). The Tribe argues that because it has not waived its sovereign immunity, and Congress has not abrogated it, the Village's counterclaim must be dismissed.

The Village does not dispute the Tribe's assertion that as a federally-recognized Indian tribe, it is, in general, immune from suit. Likewise, the Village does not claim that it has received

3

Congressional authorization to assert its counterclaim against the Tribe. Instead, the Village argues that the Tribe has waived its immunity to the Village's counterclaim by filing its own action against the Village. More specifically, the Village argues that under the doctrine of recoupment, the Tribe has waived its immunity from counterclaims that arise out of the same transaction or occurrence that is the subject matter of the action brought by the Tribe. Since its counterclaim arises out of the same subject matter as the Tribe's action and seeks relief that is similar in kind and nature, the Village contends that the Tribe has waived its immunity to this limited extent and its motion to dismiss should be denied.

The doctrine of recoupment on which the Village relies is essentially an equitable doctrine that allows a party to assert a claim that is otherwise barred as a set-off against a claim brought by the opposing party. The doctrine appears to have its origin in *United States v. Bull*, 295 U.S. 247 (1935), a tax case in which the executor of an estate was allowed to assert a claim that he had overpaid the estate tax as a set-off in an action challenging the government's income tax deficiency claim against the estate, even though the estate's overpayment claim was barred by the statute of limitations. Under the facts of the case, the Court held that recoupment of the overpayment was "in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Id.* at 262.

Several courts, most notably, the Tenth Circuit, have held that the doctrine of recoupment can also operate as a limited waiver of tribal sovereign immunity in cases where an Indian tribe sues another party. In *Berrey v. Asarco, Inc.*, 439 F.3d 636 (10th Cir. 2006), for example, the court held that tribal sovereign immunity was not a bar to a counterclaim for common-law contribution and indemnity in an action brought by an Indian tribe to recover damages from a mining company for

4

environmental contamination of its lands. The defendant mining company claimed that the Tribe had participated in the activities that allegedly caused the contamination by selling the debris from the mining processes for use as road base, surface material and railroad ballast and, thus, should share in any liability it had. *Id.* at 640. Relying on *United States v. Bull*, and its previous decision in *Jicarilla Apache Tribe of Mescalero Reservation v. Andrus*, 687 F.2d 1324 (10th Cir. 1982), the court held that "when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment-arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims." 439 F.3d 644.

The *Berrey* court adopted a three-prong test to determine whether a defendant's claim constituted a claim of recoupment. A claim of recoupment must "(1) arise from the same transaction or occurrence as the plaintiff's suit; (2) seek relief of the same kind or nature as the plaintiff's suit; and (3) seek an amount not in excess of the plaintiff's claim." *Id.* at 645. The mining company's claims for contribution and indemnity, the *Berrey* court concluded, met this test. They arose out of the same transaction or occurrence and, like the Tribe's claims, sought monetary relief. Finally, as to the third prong of the test, the court noted that the claims did not seek an amount in excess of the Tribe's claim, since "[c]laims for contribution and indemnity, by their very nature, are limited to the amount of any judgment in favor of the injured party." *Id.* at 646. The court therefore concluded that the defendant's counterclaims were not barred by sovereign immunity.

5

The doctrine of recoupment has also been applied to overcome the defense of tribal sovereign immunity by the Eighth Circuit. In *Rosebud Sioux Tribe v. Val-U Constr. Co. of South Dakota, Inc.*, 50 F.3d 560 (8th Cir. 1995), the court held that a defendant contractor was not barred from asserting a counterclaim for breach of contract in a lawsuit commenced by the Tribe for breach of the same contract. "When a tribe brings a lawsuit," the court noted, "it does not waive immunity for counterclaims . . . . except for matters asserted in recoupment." *Id.* at 562 (citations omitted). Citing the Tenth Circuit's decision in *Jicarilla*, the court continued, "[r]ecoupment is a defensive action that operates to diminish the plaintiff's recovery rather than to assert affirmative relief." *Id.*

Several district courts have also recognized the doctrine of recoupment as an exception to the bar otherwise created by sovereign immunity. *See Wyandotte Nation v. Kansas City*, 200 F. Supp.2d 1279, 1285 (D.Kan. 2002) ("Equitable recoupment is an exception to the doctrine of sovereign immunity which recognizes that by bringing a claim, a state or tribe necessarily waives immunity for matters 'arising out of the same transaction or occurrence' which is the subject matter of the suit, to the extent the counterclaims do not seek relief 'different in kind or nature' or 'exceeding the amount' of the relief sought by the state or tribe.") (quoting *Jicarilla*, 687 F.2d at 1344); *Oneida Nation of New York v. New York*, 194 F. Supp.2d 104, 136 (N.D. N.Y. 2002) ("However, it is well established that when the United States or an Indian tribe initiates a lawsuit, a defendant may assert counterclaims that sound in recoupment even absent a statutory waiver of immunity."); *Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York*, 278 F. Supp.2d 313, 359 (N.D. N.Y. 2003) (same). And while the doctrine of recoupment, as originally applied, operated to allow a defendant to off-set his liability on the plaintiff's claim by the amount of his otherwise barred claim, *see, e.g. Bull*, 295 U.S. at 700-01, several cases have also applied the

6

doctrine to allow counterclaims for declaratory relief. *See Wyandotte*, 200 F. Supp.2d at 1285; and *Oneida Nation,* 194 F. Supp.2d at 137.

It is in both ways that the Village argues the doctrine applies here. The Village contends that by seeking declaratory relief, the Tribe has waived its immunity to the Villages's claim for declaratory relief regarding the same matter. And by seeking injunctive relief directing the Village to reimburse the Tribe for previously paid assessments and to cease efforts to assess tribal property in the future, the Tribe has waived its immunity to the Village's claim for past and future assessments. Thus, the Village concludes, neither claim is barred and the Tribe's motion to dismiss should therefore be denied.

The Tribe, on the other hand, denies that it has waived its immunity as to either claim. It notes that in *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, the Supreme Court explicitly rejected the argument that by filing a lawsuit an Indian tribe waives its immunity to potential counterclaims of the defendant. In *Citizen Band Potawatomi*, the Tribe filed suit to enjoin the assessment of the State's tax on sale of cigarettes on tribal land. The State counterclaimed seeking to enforce its $2.7 million claim against the Tribe for taxes due on past sales and to enjoin the Potawatomis from selling cigarettes in the future without collecting and remitting state taxes on those sales. The State argued that to the extent its counterclaim was compulsory, the Tribe waived its immunity by seeking an injunction against the assessment. Noting that it had rejected the same contention over a half-century earlier in *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 511-512 (1940), the Court stated "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." *Id.* at 509. The Tribe argues here that *Citizen Band* constitutes an explicit rejection of the recoupment doctrine. Thus,

7

it contends, the Village's reliance on that doctrine is fatally flawed. In light of *Citizen Band* and in the absence of any Seventh Circuit authority on the issue, the Tribe argues that reliance on the doctrine of recoupment to overcome its defense of sovereign immunity would be clear error.

Alternatively, the Tribe argues that even if this Court were to conclude that the doctrine of recoupment constitutes a lawful exception to the defense of sovereign immunity, it has no application to the Village's claim for injunctive relief. The Village's request for an order directing the Tribe to pay overdue assessments, the Tribe notes, does not constitute a recoupment claim but is instead indistinguishable from Oklahoma's attempt to collect its cigarette sales tax assessment for past sales in *Citizen Band*. Unlike the overpayment of taxes in *United States v. Bull* or the contribution claim in *Berry*, the Village's claim for overdue assessments would not simply off-set the amount due and owing on the Tribe's claim. Instead, it constitutes a separate and independent claim for affirmative relief in favor of the Village. The Tribe thus argues that even if the doctrine of recoupment could overcome tribal immunity, it has no application to the Village's claim for injunctive relief.

The Court finds persuasive the Tribe's alternative argument with respect to the Village's claim for injunctive relief, which is really a claim for money damages. Whether or not the doctrine of recoupment is a lawful exception to tribal immunity, the Village's claim for the unpaid assessments on the Tribe's property does not fit within that exception as other court's have defined it. It is not a set-off against the claim that the Tribe has asserted against the Village. If the Village prevails on its claim that the tribal property at issue is subject to assessment for taxes and improvements, the Tribe's request for reimbursement of the $1.3 million it has paid in special assessments will be denied and the Village will owe the Tribe nothing. Were the Village's counterclaim for injunctive relief to remain in the case, the Village would then be entitled to a

8

judgment which would amount to an affirmative award of more than $200,000 in damages. If, on the other hand, the Tribe prevails, the Village would have to reimburse the Tribe the full $1.3 million the Tribe has paid in special assessments without any reduction for the amount the Village asserts is due and owing. Thus, the relief sought by the Village in its counterclaim for injunctive relief does not meet the third prong of the test for recoupment set out in *Berrey*. It is not a set-off against the Tribe's claim, but rather an amount separate from, and in excess of, the plaintiff's claim. It follows that the Village's counterclaim for injunctive relief is barred and must be dismissed.[1]

The same conclusion does not follow, however, with respect to the Village's counterclaim for declaratory relief. The relief sought by the Village in its request for declaratory relief is the mirror image of what the Tribe seeks. The Tribe has asked the Court to determine that the land it purchased is not subject to state laws authorizing a municipal government to assess property within its boundaries for taxes and public improvements; the Village asks the Court to determine that the Tribe's property is subject to such laws. The statute under which the Tribe seeks such relief, 28 U.S.C. § 2201, authorizes the court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." By invoking the jurisdiction of the Court to "declare the rights and other legal relations of the parties," the Tribe has expressly waived its immunity from suit as to that issue.

In *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241 (8th Cir. 1995), the Eighth Circuit addressed this issue in the context of a quiet title action brought by an Indian tribe. The district court found against the Tribe and determined the title resided with the counterclaiming defendants. On appeal,

---

[1] The fact that the Tribe is immune from the Village's counterclaim for the unpaid assessments does not leave the Village without a remedy in the event it ultimately prevails on the merits. Unpaid special assessments become a lien on the property against which they are levied and can be collected through foreclosure proceedings. *See* Wis. Stat. §§ 66.0703(13), 74.01(3), and 75.19.

9

the Tribe argued the district court lacked jurisdiction over the counterclaim because it did not waive its immunity. The Eighth Circuit rejected the Tribe's argument that it had not waived its immunity, stating:

> . . . by initiating this lawsuit, the Tribe "necessarily consents to the court's jurisdiction to determine the claims brought adversely to it." F. Cohen, *Handbook of Federal Indian Law* 324 (1982); *see also United States v. Oregon*, 657 F.2d 1009, 1014 (9th Cir.1981). We will not transmogrify the doctrine of tribal immunity into one which dictates that the tribe never loses a lawsuit. *Oregon*, 657 F.2d at 1014. When the Tribe filed this suit, it consented to and assumed the risk of the court determining that the Tribe did not have title to the disputed tracts. Moreover, requesting equitable relief from the federal district court constitutes an appeal to the sound discretion of the court; that a tribe is the plaintiff is immaterial. *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1333 (10th Cir.1982). By requesting equitable relief, the Tribe consented to the district court exercising its equitable discretion to resolve the status of the disputed lands. To hold that the district court could exercise its discretion to quiet title in favor of the plaintiff (the Tribe) but not the defendant (Rupp and Henderson) would be anomalous and contrary to the court's broad equitable powers.

45 F.3d at 1245[2]; *see also Wyandotte*, 200 F. Supp.2d at 1285 ("[B]y asking the court to quiet title, plaintiff necessarily submits for the court's consideration the question of whether defendants have title to the land. This Court may not award the relief plaintiff seeks-a declaratory judgment quieting title in the tribe-without also determining the quality of title held by defendants the Modeers.").

Likewise in this case. By invoking the jurisdiction of the Court to determine the rights of the respective parties over the land in question, the Tribe has expressly waived its immunity from the Village's claim for a determination in its favor on the same issue. To hold otherwise would "be anomalous and contrary to the court's broad equitable powers." *Rupp*, 45 F.3d at 1245. Neither

---

[2]The *Rupp* court also held that the Tribe had waived its immunity from the damage claims of the defendants. But this holding was based on the fact that the Tribe not only filed a quiet title action against the defendants, but "affirmatively requested the district court to order the defendants to assert any claims in the disputed lands they possessed against the Tribe." 45 F.3d at 1244. No such request was made here.

logic nor the law compel such a result.[3] The Tribe's motion to dismiss will therefore be denied as to the Village's claim for declaratory relief.

**ORDER**

For the reasons set forth above, the Tribe's motion to dismiss the Village's counterclaim is granted in part and denied in part. The motion to dismiss is granted as to the Village's claim for injunctive relief. It is denied as to the Village's claim for declaratory relief.

Dated this   22nd   day of June, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[3]The Tribe also argues that the Village would suffer no harm if its counterclaim for declaratory relief were dismissed since the Village's counterclaim is "virtually identical" to the Tribe's claim. (Reply Br. at 4.) In essence, the Tribe claims that the Village's claim for declaratory relief is redundant. At argument, however, the Village noted that it has been seeking a judicial resolution of its dispute with the Tribe for several years. Its previously-filed state court action has now been dismissed in response to the Tribe's lawsuit, and the Village fears voluntary dismissal of this action by the Tribe at a later date could further delay its efforts to finally resolve the matter if its counterclaim is dismissed at this stage. There is some support for the Tribe's position that the Village's counterclaim for declaratory relief should be dismissed as redundant, especially since the Federal Rules of Civil Procedure now limit the right of a plaintiff to voluntarily dismiss an action once the defendant has filed an answer. *See* Fed. R. Civ. P. 41(a); *Scruggs v. Casco Corp.* 32 F. Supp. 625 (D. Conn. 1940). But the majority rule is to the contrary, since it is often difficult to determine whether a declaratory judgment counterclaim really is redundant prior to trial. Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1406, at 34 (1990). For this reason, and to insure resolution of the dispute is not delayed, the better policy is to allow the counterclaim to proceed. If, as the Tribe's argument assumes, the counterclaim for declaratory relief is identical to the Tribe's own claim, allowing the Village to proceed on its claim for declaratory relief would not be an affront to the Tribe's sovereignty.

11